SIMEON KIMPTON *v.* HORATIO WALKER.

Bennington,
*February,*
1837.

The covenant, arising out of the words " yielding and paying," in a lease, is ————
an implied covenant and the lessee is not liable on it for rents accruing af-
ter an assignment of his term.

· This was an action of covenant broken, in which the plaintiff
declared upon a lease executed by him to defendant, on the 8th
day of January 1814, of certain premises in Manchester, at
an annual rent of twenty-five dollars, to be paid by defendant to
one James Borland.   The breach alleged was the non-payment
of the several rents, from the execution of the lease to the date of
plaintiff's writ.   The lease contained no covenant, *in terms,* on
the part of the lessee, for the payment of rent, the demise being
upon the condition of his " yielding and paying" the rent speci-
fied.

The defendant pleaded several pleas in bar.   The third plea,
after alleging payment of the said several annual rents from the
date of said lease to and including the rent due in the year
1817, proceeded as follows, viz:

And the said Horatio, in fact, saith that, after the making of
the said indenture in said declaration mentioned, and before any
part of the rent in said declaration mentioned, for the year 1818,
and afterwards, became due, and before any breach of covenant
on his part, to wit, on the twenty-third day of March, 1816, at
Manchester aforesaid, he, the said Horatio, by a certain inden-
ture of assignment, then and there made and duly signed by the
said Horatio, and sealed with his seal, and then and there ac-
knowledged by the said Horatio, and attested and recorded in
due form of law, did then and there bargain, sell, assign, transfer
and set over, for the consideration therein mentioned, to one Na-
than Ball, his heirs, executors, administrators, and assigns, one
equal undivided half or moiety of all the right, title, interest, un-
expired property, claim or demand of the said Horatio in and to
the said demised premises in said declaration mentioned, so
long as grass shall grow and water run.   By virtue of which
said last mentioned indenture of assignment, the said Nathan
Ball, afterwards, to wit, on the twenty-third day of March,
A. D. 1816, at Manchester aforesaid, entered into the said
demised premises with the appurtenances, and then and
there became and was possessed of one undivided half or
moiety thereof, for the residue of said term then to come therein,

and unexpired, whereof the said James, as well as the said Simeon, afterwards, to wit, on the day and year last aforesaid, at Manchester aforesaid, had notice. And the said Horatio in fact further saith, that, after the making of the said indenture in the said declaration mentioned, and before any part of the said rent for the year 1818, and afterwards, became due and payable, and before any breach of the said covenant, on his part, to wit, on the 26th day of March, A. D. 1817, at Manchester aforesaid, he, the said Horatio, by a certain other indenture of assignment, by him, then and there made, and signed and sealed with his seal, and then and there acknowledged by him, the said Horatio, and attested and recorded in due form of law, for the consideration therein expressed, did bargain, sell, assign, transfer and set over to the said Nathan Ball, his heirs, executors, administrators and assigns all the remaining right, title, interest, unexpired property, claim and demand whatever, of him the said Horatio in and to the said demised premises, in said declaration mentioned, so long as grass shall grow and water run ; by virtue of which said last mentioned indenture of assignment, the said Nathan Ball, afterwards, to wit, on the day and year last aforesaid, at Manchester aforesaid, entered into the said demised premises, in said declaration mentioned, and then and there became and was possessed, exclusively, of the whole of the residue of said term, then to come therein and unexpired, whereof the said James, as well as the said Simeon, afterwasds, to wit, on the day and year last aforesaid, at Manchester aforesaid, had notice.

And the said Horatio in fact further saith, that the said James Borland, with the knowledge and consent of the said Simeon, after the entry of the said Nathan into the said demised premises, in said declaration mentioned, under and by virtue of the said indentures of assignment, to wit, on the first day of March, A. D. 1818, at Manchester aforesaid, did accept and receive of and from the said Nathan a large sum of money, to wit, the sum of twenty-five dollars for the rent aforesaid, in the said declaration mentioned, and then and there with the like knowledge and consent of the said Simeon, accepted the said Nathan as his tenant of the said demised premises, in said declaration mentioned, and this the said Horatio is ready to verify; &c."

To this plea, " so far as it relates to the several breaches of covenant, in the declaration assigned, in non-payment of the said annual rent for the year 1818, and to the commencement of this

suit," the plaintiff demurred. The county court decided said plea sufficient, and rendered judgment that the defendant recover his costs. To this decision the plaintiff excepted.

*D. Roberts, jr. for plaintiff.*

The words, on which the plaintiff relies, as creating a covenant, are these: "To have and to hold, &c. the said Horatio *yielding and paying* to James Borland, his heirs, &c. yearly and every year, so long as grass shall grow, or water run, the full and just sum of 25 dollars." These words constitute *an express covenant*, and not a mere *covenant by implication of law.*

These terms explain themselves; for an express covenant, or *covenant in deed,* as it is termed in some of the books, can mean nothing else, than that the expressions, used in the deed, do, of themselves, import an agreement; whereas a covenant, raised by implication of law, can mean nothing else, than that the words used do not, of themselves, express or imply an agreement, but that the law, for the sake of preventing injustice, or for better securing the enjoyment of the express covenant, attaches to certain words a technical force, which would not, otherwise, belong to them. The *law* raises the implication, as much as to say that no such implication is found in the *words.* Bac. Ab. Covenant B., Vin. Ab. Covenant F. 1 Swift's Dig. 353, 355.

The formal words, " covenant, grant," &c. are not necessary to make a covenant, but any form of words or mode of expression, which clearly evinces an agreement, will amount (being under seal,) to an express covenant. Bac. Ab. Covenant A., 1 Swift's Dig. 353. Vin. Ab. Covenant C. 21, & seq. 7. Petersdorff's Ab. 84. 2 Mod. 268. *Saltoun* v. *Houstoun,* 1 Bing. 433. 1 Sel. N. P. 469. Moore, 135. 1 Esp. N. P. 267. *Hallett* v. *Wylie,* 3 Johns. 44. See instances of covenants created by the use of participles and otherwise, without the formal words of covenanting. Bac. Ab. Covenant A., Com. Dig. covenant (A. 2.) Vin. Ab. Covenant S. 6.

The usual instances of covenants, by implication of law, are, where the words, *dedi, concessi,* or *demisi,* are used in a lease for years, being held equivalent to a covenant for quiet enjoyment. Bac. Ab. Covenant B. Yet these words, of themselves, import no such agreement; but, inasmuch as it is clearly unjust for one to assume the power of giving, granting, or demising what he has

no authority to give, grant, or demise, the law attaches to the act done, rather than the words used, an obligation to secure the grantee in the enjoyment of the thing granted ; and this obligation it fixes and enforces, by attaching an artificial force to certain technical expressions, and implying a covenant, where the words used do not, of themselves. import one.   Hence appears a marked distinction between covenants express, and covenants in law, that, in one case, an agreement is found in the words used, without the aid of an artificial implication, and in the other case, not.

The words "yielding and paying," as here used, seem to import an agreement, on the part of Walker, to yield and pay, or they import nothing.   And so it is said of these words, and the word *reddendo*, in Bac. Ab. Covenant B. 1 Swift's Dig. 355. 1 Sel. N. P. 470. and note 7.   *Giles* v. *Hooper*, Carth. 135.

These words do not create a condition of Walker's tenancy, but the whole language goes to create mutual covenants between Kimpton and Walker.   They are so called in the indenture.   7 Petersdorff's Ab. 73 and 100.   *Boone* v. *Eyre* 2 W. Blac. Rep. 1312.   S. C. 1 Hen. Blac. 273.   2 Saund Rep. 155. 4 Day's Rep. 326.

The words " yielding and paying" make an express covenant and not a covenant in law merely.   7 Petersdorff's Ab. 85. *Helyar* v. *Casbord,* 1 Sid. 266.   *Newton* v. *Osborne,* Sty. 387.   *Porter* v. *Sweetnone,* Sty. 406, 431.   *Hollis* v. *Carr*, 2, Mod. 87.   S. C. Finch's C. R. 261.   1 Sel. N. P. 470, 471. 1 Esp. N. P. 267. 1 Swift's Dig. 354.   Vin. Ab. Cov. C. 10.

Some authorities may be found the other way, but they are either the opinions of book makers, or the unsupported *dicta* of single judges.   Of this character are 1 Saund. Rep. 241. b. note.   1 Sid. 447.   3 T. R. 402.   9 Ves. 330.

It is a loose use of language, probably, that has led to this conflict of authorities ; and it is apprehended, that these words have sometimes been regarded as creating a mere covenant in law, because the formal words of covenanting are not used, but the intention to contract is a subject of implication, from terms used, which are not the most apt and formal to express such intention.   Hence these words may have been said to *imply* a covenant, or to contain *an implied covenant ;* and from being said to contain or make an implied covenant, it would be easy

for an author to class these among *covenants raised by implica-* *tion of law* ; whereas, it is clear that, however informal or inapt the words may be, if an agreement can be inferred or implied *from them*, they constitute an express covenant. There is no such third class of covenants as *covenants implied*, and the term seems to be a misnomer. A covenant is implied only by the law, and is not found in the words used. See instances of this use of language in 1 Swift's Dig. 355. Vin. Ab. Covenant F. 1 Esp. N. P. 267. See also observations on this point in Hammond's parties to actions. ·  ·

This, then, being an express covenant on the part of Walker, binds him personally, and it is no defence to an action thereon, that he assigned before breach made by him, and that Borland accepted such assignee as his tenant. 1 Chit. Pl. 36. 112. 1 Sel. N. P. 475. *Port* v. *Jackson*, 17 Johns. Rep. 239, 479.

Another view may be taken of this case. The case shows sufficiently that Kimpton was the lessee of Borland, and stood bound to pay him, as rent, 25 dollars a year, &c. When he would have assigned, therefore, it became him to be discreet in the selection of his assignee, and, inasmuch as by assignment, the estate, out of which he could have raised the yearly profit, would pass from him, he ought not only to have chosen a responsible assignee, but should have bound him in such a covenant, as would make him (Kimpton,) perfectly secure against the operation of his covenant to Borland. This security could be attained only by binding his assignee to perform that covenant for him, and in his stead. Nor would this be driving a hard bargain with his assignee, and, at the worst, would be but passing over to his assignee, his (Kimpton's) covenant with Borland. It is under such circumstances, that Kimpton assigns to Walker all his interest in the premises.

Now let us assume that this is, in effect, a covenant by Walker, to perform for Kimpton his covenant with Borland, and see whether all the circumstances of the case are not consistent with this assumption, and inconsistent with any other. And

I. The situation of the parties is to be observed, as referred to above.

II. Kimpton's covenant with Borland is particularly referred to, to determine the days of payment; and the provisions as to the sum to be paid, the mode and times of payment, in the two instruments, are identical.

III. Borland is, in no way, affected by this language of Walker. He can neither sue upon it, nor claim any benefit from it, nor can be injured by it. To be sure, so long as Walker occupied, or was assignee of the term, Borland could recover of him rent. But this, not by reason of any privity of contract between them, for it was not possible for Kimpton and Walker, by any arrangement between themselves, to have affected Borland, who claimed through neither of them. If, therefore, this language was introduced for the sake of Kimpton alone, and Borland is no ways interested therein, how could Walker's assignment and the acceptance of rent from such assignee, *by* Borland, affect the obligation of Walker's covenant with Kimpton? *Port* v. *Jackson*, 17 Johns. Rep. 479.

There are other considerations, which go to show that these words constitute a covenant personally binding upon Walker.

The deed is indented. The language of the deed, therefore, is, as well that of Walker as of Kimpton; or rather, where an act to be done by Kimpton is spoken of, the language is Kimpton's; where an act to be done by Walker, it is the language of Walker. "To have and to hold," &c. This is the language of Kimpton. "He the said Horatio, yielding and paying," &c. This is the language of Walker.

Again, this deed is expressed to be made "for the consideration of the covenants and agreements therein after mentioned, reserved and contained, on the part and behalf of the said Horatio Walker, &c. to be done and performed." Thus, it appears that no money or other valuable thing, paid or given, entered into the consideration of the deed, but the same was made in consideration of certain supposed covenants on the part of Walker, which covenants are created by the words relied on, or there are no covenants on the part of Walker in the deed, and so the deed was, in truth, made upon no consideration. And in Kimpton's covenant for quiet enjoyment, referring to these words, is this language, "he the said Horatio Walker, his heirs, &c. paying the rent, and performing all and singular the *covenants and agreements*, before, in and by these presents comprised, secured and contained on his and their part and behalf to be paid, done, performed and kept, shall and may quietly enjoy, &c."

Again, it is perhaps a consideration entitled to some weight, that this 25 dollars is not denominated rent. There was a propriety in this, for the idea of rent is, that it is payable as a re-

turn for the possession of lands and tenements. It must, therefore, be rendered to the person, from whom the lands or tenements pass. Hence a reservation of rent to a stranger is void. Co. Litt. 143. b. 3 Kent's com. 463,

In this case, the land passed from Kimpton, but the payment was to be made to Borland. This is something, therefore, more than a mere *reservation of rent,* or it is nothing. Even had the word "*rent*" been used, it must have been regarded like the case, where an annuity, under the name of rent, is granted out of an incorporeal hereditament, which would operate as a personal contract, and oblige the grantee to pay the money reserved, although it would be no legal rent in contemplation of law. 2 Bl. Com. 42.

Again, it is worthy of observation, that Walker covenants for himself alone, and does not name his assigns. There was a propriety in this, too, for the covenant is to pay a collateral sum to a stranger, and sums to be collateral to and not concerning the thing demised; so that had Walker's assigns been named, they would not have been bound by the covenant. Spencer's case, 5 Rep. 17. 1 Sel. N. P. 507.

If the preceding views be correct, it is a matter of no consequence in this case, whether, in the ordinary cases of lessors and lessees, the words "yielding and paying" make an express covenant or a covenant in law.

*P. Smith, and A. L. Miner, for defendants.*

The defendant is not subject to the payment of rent, after he assigned his interest in the lease, and the lessor accepted the assignee as his tenant. It is admitted that the common law of England makes the original lessee responsible, on all express covenants, notwithstanding an acceptance of the assignee of lessee by the lessor. It is believed, however, that the courts in this country will not adopt the principle; for it clearly appears, that it originated in a mistake, and is not well founded. Ham. Parties, 129. The case before the court does not call for a determination of the question.

The lessee, at all events, is not liable on covenants in law, after he assigns his interest, and the lessor accepts of the assignee, as his tenant, by receiving rent, or otherwise. 1 Chitty Pl. 36, 112; Bac. Ab. Covenant E 4; Debt. D.; 1 Saund. Rep. 241, note 5; 1 T. Rep. 92; 4 do. 94, 98, 100; 7 do. 345; Cro. Jac. 523.

There is no express covenant in the lease, on the part of the defendants to pay rent. The terms, "yielding and paying," do not constitute an express, but an implied covenant, or a covenant in law. 1 Saund. Rep. 241, b, note 5. Bac. Ab. Covenant B; Com. Dig. Covenant A. 3; Platt on Covenants, 50; *Harper* v. *Burgh*, 2 Lev. 206; *Webb* v. *Russell*, 3 Term. Rep. 402; *Vyvyan* v. *Arthur*, 1 Barn. & Cress. 416; S. C. Dow. & Ry. 670; *Iggulden* v. *May*, 9 Ves. 330; *Church* v. *Brown* 15 Ves. 264; *Mills* v. *Auriol*, 4 Ter. Rep. 98.

The opinion of the court was delivered by

PHELPS, J.—This case coming before us upon a demurrer to the defendant's third plea in bar alone, we have no concern with the other issues determined in the court below.

The sufficiency of the third plea depends upon the nature and effect of the covenant declared on. It is to be remembered, that there is, in the lease in question, no undertaking in terms, on the part of the lessee, to pay the rents. The demise is made to him upon the usual terms, he "yielding and paying" certain rents therein specified. These words, "yielding and paying," &c. however, imply a covenant, and the acceptance of the lease, upon these conditions, by the lessee, is, in legal construction and effect, a covenant or undertaking to pay the stipulated rent. This, I apprehend, is upon the principle, of such common application in cases of simple contract, where the law implies a promise from the act of the party, although none is, in fact, made. Thus, if he buy goods at a stipulated price, the law implies a promise to pay that price, although none is, in terms, made. So, in this case, the acceptance of the lease, upon the terms expressed in it, is becoming a party to the contract, in all its particulars, and involves, as a necessary legal consequence, an obligation to pay the rent. The contract being under seal, the undertaking, involved in becoming a party to it, assumes, of course, the technical form of covenant, and, hence, the doctrine of implied covenants is analogous to that of implied assumpsit.

The case is the same with one, who becomes a party to the lease by assignment of the term; he being liable to an action of covenant for the rents, although not an original party to the instrument, upon the principle already stated. Now, with respect to him, it cannot be said, in strictness, that he covenanted "in and by the indenture;" for at the time, when the instrument took effect, he was not a party to it. But, upon taking the as-

signment of the term, upon the conditions of the lease, the law implies a covenant or undertaking on his part to pay the rent. So it is with each successive assignee ; and, hence, it is said that the covenant runs with the land. In other words, the covenant is incident to the estate, and whosoever takes the one, is considered to have voluntarily assumed the obligation of the other. If it be asked, why, in this view of the subject, the remedy is not by assumpsit, the answer is, that this doctrine was settled long before the action of assumpsit came into general use.

So far, there is no difficulty in the subject, nor is it of any importance, whether, the covenant growing out of the words " yielding and paying," is considered an express or implied covenant.

But here a question arises. Suppose the lessee assigns his term, is he liable personally in the action of covenant, for rents, which thereafter accrue ? Or, in other words, is there then subsisting a personal covenant, distinct from and independent of the covenant which runs with the land. Or, to state the question more particularly, with reference to this case, does the assignment involve a guaranty, on the part of the assignor, of the performance of the terms and conditions of the lease by the assignee ?

It is said in the books, that, if the covenant be *express*, the lessee is bound, so long as the term endures ; but if implied, he is discharged whenever he is divested of the estate. The question then becomes this. Is the covenant created by the terms, " yielding and paying," an express or implied covenant ? Although the rule above mentioned, appears to be well settled, yet, upon the question, what is an express covenant, there is great confusion in the books. Indeed, whether the covenant in question be express or implied, is a question upon which the authorities are so contradictory as to furnish little aid in its solution. The manner, in which the point is treated by elementary writers, may furnish a fair specimen of the confusion, which has prevailed on the subject.

Bacon classes this covenant with implied covenants. He thus illustrates the distinction : " A leases to B, rendering rent, and B. *covenants to pay it*, B. is liable after assignment, it being upon an express covenant;" cites Brownl. and Sid. 447. Bac. A. Covenant E. 4.

Bennington,
*February,*
1837.

Kimpton
*v.*
Walker.

Viner, (Cov. F.) says such a covenant is a covenant in law, or implied, and cites Brownl. 215. Dyer, 15th Hen. 8th.   He also (Cov. C.) cites 2 Lev. 206. to shew it a covenant in law, and Sty. 387, 407 to prove it express.

Selwyn says it is an express covenant, and cites Styles 407. But cites Sid. 447. 1 Saund. 241. note 5. and 3 T. R. 402. *contra.*

Chitty cites, as cases of express covenant, 1 Saund. 241. and note. 1 T. R. 92. 7 do. 345. H. Black. 433. 4 T. R. 94, 100, and as implied, Sid. 447. W. Jones 223. Cro. Jac. 525.

In Petersdorff's Abr., Roll. Abr. is cited one way, and Siderfin the other. Swift classes them with covenants in deed, or express covenants, yet he says the words, " yielding and paying," *imply* a covenant.

Sergeant Williams, in his note to Saund. 441. lays it down, that the covenant is implied.

In short, the old authorities appear quite contradictory, and the elementary writers have handed them down to us as they are. On the whole, however, the weight of authority, and especially modern authority, appears to be in favor of holding these covenants implied.

The difficulty seems to have arisen from the indefinite use of the terms " express," and " implied," as having reference to the thing to be done, on the one hand, or the act of assuming the obligation, on the other. Thus, the expression " yielding and paying rent," expresses the thing to be done, and, in that sense, the contract is express. Yet the words are introduced, in form, as a condition of the demise, and are susceptible of such a construction.   Still the question, whether the lessee incurs a personal liability to be enforced by action, is not necessarily involved in the phraseology, but is left to legal construction or implication. It is true, that, by acceptance of the lease, the lessee becomes liable for the rent ; but it is impossible for me to distinguish the origin of his liability from the ordinary case of an implied assumpsit, where the obligation arises, not from express undertaking, but from voluntarily assuming a relation, to which the law attaches certain liabilities. Indeed, remove the seal from the lease in question, and we have a case for assumpsit for use and occupation ; replace the seal, and the action must be covenant ; but the covenant in one case is as much implied as the promise in the other.   In my opinion, the distinction between express

and implied covenants, when taken with a view to the question
of the lessee's continued liability, has reference to the nature of
the obligation assumed.   For if the obligation of the defendant
be merely an incident to his tenancy, which is co-eval with it,
and passes with it, by assignment, then it would seem that he is
holden no longer than he remains tenant; but if it be a personal
contract, capable of subsisting distinct from and independent of
the tenancy, then it subsists so long as the term endures.   In-
deed, the distinction has no sort of meaning, when applied to the
subject matter of the covenant, to wit, the payment of the rent.
The rent to be paid is always expressed in a formal lease, and
must be, to render the reservation valid.

It seems to me obvious that the distinction has reference to
the matter of the obligation, and that, unless the lessee bind
himself personally, in express terms, to the payment of the rent,
his obligation is incident to his estate, and so far as it gives a
personal remedy, by action of covenant, it is implied.

It was doubtless competent for the lessee to assume upon him-
self to pay the rent, as an enduring obligation, which might survive
an assignment of his term.   Whether he has done so, in any given
case, is a question of intention, to be gathered from the deed.
If he expressly undertake, promise or covenant to pay it, the
question is at rest; but if he merely accept the lease, which re-
serves the rent, and has the power, by law, to assign the term,
the absence of such express undertaking affords strong evidence
of the intent of the parties on this point.

In this view of the subject, it is clearly incumbent on the plain-
tiff, to establish the personal obligation.   From the nature of the
covenant, growing out of the assumption of the character of ten-
ant, depending upon that relation, and accompanying it, in case
of an assignment of the term, we are inclined to consider it as
not involving, necessarily, and of course, a personal liability, capa-
ble of being disconnected from the relation of landlord and ten-
ant.   If the mere acceptance of a lease upon the terms of " yield-
ing and paying," is considered as amounting to a covenant, or if
the covenant originates in such an act, it seems, that, if the rela-
tion is transferred, it is so with all its incidents; and if the lessee
can divest himself of the character of tenant, he would of course
clear himself of all liability incident to it.   On the other hand,
it is always in the power of the lessor to require a covenant, in
terms for the payment of the rents, and, if such an obligation is

intended to be assumed, words should be used clearly indicative of such intention,—such as " *covenant*," " *agree*," &c.

Another consideration fortifies this argument. An assignee of the term is liable to an action of covenant for the rent, in the same manner, and, I think, upon the same principle, as the original lessee. But, as to him, the covenant is implied; for it is agreed on all hands, that he is not liable after he parts with the term. If, then, this covenant is implied, as respects him, how can its nature be different, as respects the original lessee? If there be no covenant, except what is implied in the words, " *yielding and paying*," I can conceive no distinction between the liabilities of successive tenants. And if the obligation be merely incident to the estate, although it may be enforced by personal action, yet, if that obligation is transferred in one case, by assignment of the term, I see not how it is not in another.

Upon the whole, we think that this covenant is to be considered an implied one, so far as respects the question between these parties, and that it does not, on the face of it, import a mere personal obligation, resting upon the defendant, upon the footing of an express contract, after his tenancy has ceased. The judgment of the County Court is, therefore, affirmed.